UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVIN TREVONE LAMAR,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SOUN and TOON,<br><br>　　　　Defendants. | Case No. 1:23-cv-00462-HBK (PC)<br><br>ORDER GRANTING DEFENDANTS' EXHAUSTION BASED MOTION FOR SUMMARY JUDGMENT[1]<br><br>(Doc. No. 28) |

Pending before the Court is the exhaustion-based Motion for Summary Judgment filed by Defendants Soun and Toon on November 20, 2024. (Doc. No. 28, "MSJ"). Plaintiff, proceeding pro se, filed an Opposition, (Doc. No. 30), and Defendants filed a Reply (Doc. No. 33). Finding no genuine dispute of material fact, the Court grants Defendants' MSJ.

## I.　　BACKGROUND

### A. Summary of Plaintiff's Complaint

Plaintiff Devin Trevone Lamar ("Plaintiff" or "Lamar"), a former county jail detainee, initiated this action by filing a pro se civil rights complaint pursuant to 42 U.S.C § 1983. (Doc. No. 1). Plaintiff proceeds on his original Complaint, as screened[2], that alleges claims of Eighth

---

[1] Both parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c)(1). (Doc. No. 35).
[2] On November 13, 2023, the Court severed Plaintiff's claims against Defendants Lewis and Franco,

Amendment excessive use of force against Defendants Soun and Toon.  (Doc. No. 1, 13).

The Complaint alleges that on or about November 28 or 29, 2020, while Plaintiff was being held as a pretrial detainee at the Fresno County Jail ("FCJ"), he was forced back into his cell by Corporal Soun after stating safety concerns to Toon regarding Plaintiff's cellmate.  (Doc. No. 1 at 3).  Later that day, Plaintiff vacated his cell and took all his belongings with him to the dayroom, where he laid down in the prone position.  (*Id*.).  Soon thereafter, Corporal Soun came into the dayroom with a "squadron of officers" and Soun began punching Plaintiff.  (*Id*.).  While Soun was punching Plaintiff, Defendant Toon placed his knee on Plaintiff's neck.  (*Id*. at 4).  Plaintiff did not resist.  (*Id*.).  Then Corporal Soun took Plaintiff into a hallway, slammed him up against a wall, twisted both of Plaintiff's arms, and told him, "Welcome to Fresno County Jail." (*Id*.).  As a result of this incident and another excessive force incident at FCJ (which is the subject of a now-severed claim), Plaintiff suffers from trauma, emotional distress, and mental anguish.  (*Id*. at 4-5).  As relief, Plaintiff seeks $2,000,000 in damages and injunctive relief to stop the Defendants from harming him.  (*Id*. at 6).

### B. Defendant's Exhaustion-Based Motion for Summary Judgment

Defendants timely filed the instant exhaustion based MSJ on November 20, 2024.  (Doc. No. 28).  In support, Defendants submit a memorandum of points and authorities (Doc. No. 28); the declaration of Captain Adam Esmay accompanied by various exhibits (Doc. No. 28-1); a *Rand* warning to Plaintiff (Doc. No. 28-2); a Notice of Motion (Doc. No. 28-3); and Statement of Undisputed Material Facts (Doc. No. 28-4).  Defendants contend the uncontroverted evidence proves Plaintiff did not properly and fully exhaust his available administrative remedies that are available at the FCJ regarding his Eighth Amendment claims against Defendants Soun and Toon.  (*See generally* Doc. No. 28).  In fact, Defendants assert that Plaintiff did not even initiate the administrative grievance process with respect to the November 28-29, 2020 incident and cannot plausibly contend that he exhausted his administrative remedies.  (*Id*. at 14).  Accordingly, they argue they are entitled to summary judgment as a matter of law.

---

which were found to be cognizable but unrelated to the claims against Soun and Toon and that they would have been time-barred if dismissed.  (Doc. No. 13).

**C. Plaintiff's Opposition to Exhaustion-Based MSJ**

On December 2, 2024, Plaintiff filed an Opposition. (Doc. No. 30). Plaintiff's Opposition comprises only two pages and does not comply with Local Rule 260. Specifically, Plaintiff does not reproduce Defendants' Statement of Undisputed Facts and "admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." (L.R. 260(b)) (E.D. Cal. 2023). Rather, Plaintiff uses the Opposition to "explain why [he] wasn't able to fully exhaust [his] administrative remedies." (Doc. No. 30 at 1). Plaintiff asserts that he did submit a grievance regarding the November 28, 2020 incident "on or around 12-12-2020" but that he never received a response. (*Id*. at 1). Plaintiff also contends that on another occasion an FCJ officer took his grievance, but he never received a response. (*Id*. at 1-2). Plaintiff states that he submitted a grievance regarding the January 17, 2021 excessive use of force incident involving Officers Lewis and Franco (now severed from this action) but was unable to fully exhaust that grievance due to his transfer to CDCR and because he never received a response. (*Id*. at 2). Plaintiff asks the Court to deny summary judgment based on his alleged efforts to exhaust his administrative remedies. (*Id*.).

## II.   APPLICABLE LAW

**A. Summary Judgment Standard**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material where it is (1) relevant to an element of a claim or a defense under the substantive law and (2) would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247 (1987).

The party moving for summary judgment bears the initial burden of proving the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the moving party has met this burden, the nonmoving party must go beyond the pleadings and set forth specific facts by affidavits, deposition testimony, documents, or discovery responses, showing there is a genuine issue that must be resolved by trial. *See* Fed. R. Civ. P. 56(c)(1);

*Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021). A mere "scintilla of evidence" in support of the nonmoving party's position is insufficient. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Rather, the evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party, to return a verdict in that party's favor. *Id.*

In an exhaustion-based summary judgment motion, the defendant bears the initial burden of establishing "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). If the defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of persuasion remains, however, with defendant. *Id.*

The Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. The omission to an argument, document, paper, or objection is not to be construed that the Court did not consider the argument, document, paper, or objection. Instead, the Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate for purposes of this Order.

**B. Exhaustion Under the PLRA**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life," including *Bivens* claims. *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). Exhaustion is a condition precedent to filing a civil rights claim. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

The PLRA recognizes no exception to the exhaustion requirement, and the court may not recognize a new exception, even in "special circumstances." *Ross v. Blake*, 578 U.S. 632, 648 (2016). The one significant qualifier is that "the remedies must indeed be 'available' to the

4

prisoner." *Id.* at 639. A prison's internal grievance process controls whether the grievance satisfies the PLRA exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

An inmate must exhaust available remedies but is not required to exhaust unavailable remedies. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Id.* (quoting *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005)). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 204. It is the defendant's burden to prove that there was an available administrative remedy, and that the prisoner failed to exhaust that remedy. *Albino*, 747 F.3d at 1172. "Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* If the court concludes that the prisoner failed to exhaust available administrative remedies, the proper remedy is dismissal without prejudice. *See Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

**C. FCJ Grievance Procedures**

The FCJ inmate grievance system involves a structured two-stage process designed to allow inmates to alert FCJ to grievances concerning any condition of confinement at the Jail, including, but not limited to, officer conduct, disciplinary actions, food, mail, medical care, legal services, and telephone. (Doc. No. 28-1, ¶ 22). Proper compliance with inmate grievance procedures requires an inmate to provide specific information related to a grievance on FCJ's Inmate Grievance Form, J-105A ("Grievance Form"), including: 1) the employee(s) involved in the incident (if applicable); 2) the identity of any witnesses; 3) the date and time of the alleged incident; 4) the specific type of grievance; and 5) a description of the important details of the alleged incident and other relevant information that led to the filing of the grievance. This

information, along with appeals information, is entered into a grievance registry where the pertinent information is stored. (*Id*. ¶ 23). After an inmate submits a timely, properly completed, and signed Grievance Form to floor staff, an initial attempt can be made to resolve the complaint or problem by the correctional officer. (*Id*. ¶ 24). Under certain circumstances, the Grievance Form is immediately submitted to the Bureau Commander. (*Id*. ¶ 25).

Inmate Grievance Form, J-105A, and the Handbook state that an inmate has 14 days from the date of the alleged incident to submit a grievance. (*Id*. ¶ 26). Failure to submit a grievance within the required 14 days of the alleged incident is considered abandonment of the grievance and is grounds for automatic rejection without investigation. (*Id*. ¶ 27).

After a grievance is received by FCJ staff, it is placed in the Grievance Bin located in the Distribution room prior to the end of shift. (*Id*. ¶ 28). Based upon the findings of the initial investigation into a submitted grievance, the investigating staff member shall make a recommendation to either sustain or not sustain the inmate's grievance. (*Id*. ¶ 29). After the initial decision is made, the grievance, along with the recommendation from the investigating staff member is reviewed by the Lieutenant or Manager/Supervisor, who makes a final decision whether to sustain or not sustain the grievance. (*Id*. ¶ 30).

FCJ's grievance policies and procedures provide that a grievance shall be investigated and processed for review within a reasonable amount of time after submission, usually with 14-days. (*Id*. ¶ 31). Upon conclusion of the grievance review process, FCJ provides the inmate with a copy of its written response, entitled "Inmate Grievance Review Report." (*Id*. ¶ 32). If the inmate's grievance is not able to be resolved at this initial step, or the inmate is not satisfied with the Inmate Grievance Review Report, an inmate must submit a timely, properly completed, and signed second-level Inmate Grievance Appeal Form, J-105B ("Appeal Form"). (*Id*. ¶ 33).

Pursuant to FCJ's policies and procedures, inmates are required to submit an Appeal Form within five (5) calendar days from the date of receipt of the Inmate Grievance Review Report. (*Id*. ¶ 34). An Appeal Form may only be submitted in response to an already grieved incident. (*Id*. ¶ 35). At the times relevant herein, FCJ routed all inmate grievance "Appeal" forms to the "Bureau Commander" for review and response. (*Id*. 36). At the times relevant herein, FCJ

grievance policies and procedures provided that "within thirty (30) workdays or as soon as reasonably practicable," the Bureau Commander would issue a written response on the inmate's Appeal form, either affirming or reversing the decision of the Lieutenant and then provide a copy to the inmate. (*Id*. ¶ 37). At the times relevant herein, the "Bureau Commander's" decision as to the inmate's grievance "Appeal" is final and, unless otherwise noted in the Commander's written response, deemed an exhaustion of the issue(s) accepted for Appeal. (*Id*. ¶ 38).

FCJ's policies and procedures provide that a defective grievance can be denied on procedural grounds without addressing the substantive issue. However, if the defect on which the rejection was based is correctable, the inmate is entitled to a reasonable time extension within which to correct the defect and resubmit the grievance or appeal. (*Id*. ¶ 39). FCJ grievance policies and procedures provide that "ordinarily, five (5) calendar days from the date of return to the inmate was reasonable for resubmission" of a corrected grievance. (*Id*. ¶ 40). FCJ grievance policies and procedures also provide that staff had discretion to accept, and were to consider accepting, a grievance or appeal "that raised a sensitive or problematic issue, even though that submission may have been somewhat untimely." (*Id*. ¶ 41).

FCJ's Inmate Handbook that is provided to inmates upon booking, warns that under the Prison Litigation Reform Act of 1996 (PLRA), inmates must completely exhaust the Jail's internal grievance and appeals processes prior to filing any complaint with the court. (*Id*. ¶ 42).

**ANALYSIS**

**A. Material Facts Regarding Exhaustion of Administrative Remedies**

Following a thorough review of the evidence submitted,[3] the Court finds these material facts are deemed undisputed, unless otherwise indicated:

---

[3] The Court notes that Plaintiff did not file a response to Defendants' Statement of Undisputed Facts ("Statement") as required under the Local Rules. *See* E.D. Cal. L.R. 260(b) (directing "[a]ny party opposing a motion for summary judgment or summary adjudication [to] reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."). Thus, the Court may properly take all facts set forth in Defendants' Statement as undisputed. Nevertheless, the Court has considered the evidence contained in Plaintiff's verified Complaint and his Opposition in determining whether the facts are undisputed under applicable legal standards.

7

- Plaintiff was an inmate in the Fresno County Jail ("FCJ") between June 19, 2020, and February 12, 2021. (Doc. No. 28-1, ¶ 11).
- Between June 19, 2020, and February 12, 2021, Plaintiff utilized FCJ's grievance process to grieve eight separate incidents. (*Id*. ¶ 12).
- Plaintiff's first grievance was submitted on December 4, 2020, and his last was submitted on January 31, 2021. (*Id*. ¶ 13).
- Plaintiff exhausted FCJ's administrative remedies process for two of his eight grievances. (*Id*. ¶ 14).
- Plaintiff's operative complaint is predicated on an event he alleges occurred on either November 28 or November 29, 2020. (*Id*. ¶ 15).
- Plaintiff submitted grievances for events he alleges took place on October 13, 2020 [Grievance No. 2020120036], November 25, 2020 [Grievance No. 2020120037], and December 12, 2020. (*Id*. ¶ 16)
- The Fresno County Sheriff's Office is responsible for the overall operation of FCJ. (Id. ¶ 17).
- In November of 2020, FCJ had in place established inmate grievance processes and procedures pursuant to Section 1073 of Title 15 of the California Code of Regulations, for use and accessible by inmates, twenty-four hours a day, seven days a week, which included written and adopted official Department Policy entitled "Policies and Procedures No. E-140: Inmate Grievance Procedures," and an "Inmate Orientation Handbook" ("Handbook"). (*Id*. ¶ 18).
- The Inmate Orientation Handbook is given to each inmate and explains the rules and procedures of FCJ, including FCJ's inmate grievance process. (*Id*. ¶ 19).
- At all times relevant to his allegations, Plaintiff was aware of the inmate grievance process and how to appeal an unfavorable decision. (*Id*. ¶ 20).
- Plaintiff grieved eight separate incidents while in custody at FCJ, and exhausted two of his grievances pursuant to FCJ's policies and procedures. However, none of Plaintiff's

8

grievances allege that Defendants Soun and Toon used excessive force in their dealings with Plaintiff.  (*Id*. ¶ 21).

- During the relevant time period, FCJ's grievance process involved a two-step process for alerting prison officials to any concerns related to conditions of confinement at the jail. (*Id*. ¶ 22).

- Proper compliance with FCJ's grievance procedures requires an inmate to provide specific information related to a grievance on FCJ's Inmate Grievance Form, J-105A ("Grievance Form"), including: 1) the employee involved in the incident (if applicable); 2) the identity of any witnesses; 3) the date and time of the alleged incident; 4) the specific type of grievance; and 5) a description of the important details of the alleged incident and other relevant information that led to the filing of the grievance.  (*Id*. ¶ 23).

- On December 4, 2020, Plaintiff submitted a grievance regarding alleged events that occurred on November 21, 2020.  None of these allegations include Defendants or the use of excessive force.  (*Id*. ¶ 43).

- On December 10, 2024, Plaintiff received FCJ's response to this grievance. (*Id*. ¶ 44).

- Seventeen days later, Plaintiff appealed FCJ's response to his December 4, 2020, grievance.  (*Id*. ¶ 45).

- Even though Plaintiff's appeal was untimely, FCJ reviewed Plaintiff's Grievance Appeal and responded. (*Id*. ¶ 46).

- On the same day, December 4, 2020, Plaintiff submitted a second grievance for an incident that allegedly occurred on November 25, 2020.  This grievance does not name Soun or Toon and does not concern the use of excessive force.  (*Id*. ¶ 47).

- On December 14, 2020, Plaintiff received FCJ's response to this grievance.  (*Id*. ¶ 48).

- Plaintiff submitted a Grievance Appeal on December 27, 2020, approximately one week past the required date.  (*Id*. ¶ 49).

- Even though Plaintiff submitted a Grievance Appeal outside the required five days, FCJ reviewed Plaintiff's Grievance Appeal and responded.  (*Id*. ¶ 50).

9

- Subsequent to Plaintiff submitting a grievance on December 4, 2020, and prior to the date he was transferred, February 12, 2021, Plaintiff submitted, but failed to exhaust, an additional six grievances. (*Id*. ¶ 51)**.**

- None of the grievances submitted by Plaintiff between June 19, 2020, and the date he was transferred, February 12, 2021, mention Defendants Soun or Toon or allege events on which Plaintiff bases his Complaint as screened. (*Id*. ¶ 51).

**B. Failure to Exhaust Plaintiff's Claims Against Soun and Toon**

It is undisputed that Plaintiff did not fully exhaust his administrative remedies as to his claim against Defendants Soun and Toon. Indeed, Plaintiff admitted as much on the face of his initial Complaint and in a response to the Court's subsequent Order to Show Cause ("OTSC"). (*See* Doc. No. 1 at 3; Doc. No. 8). In his response to the Court's July 13, 2023 OTSC, Plaintiff stated:

> I factually submitted grievances prior to filing this suit. The grievance against Corporal V. Soun and Z. Toon was submitted December 2020. The grievance against T. Lewis and M. Franco was submitted January-February 2021. I filed this suit in March-April 2023. The grievances copies I mailed off to a relative of mines who still has them till this day. Also the grievances submitted should be in the jail system database. I wasn't able to appeal any grievances due to Sergeants not conducting grievance response interviews, either. For sure the grievances were at least submitted prior to filing a suit.

(Doc. No. 8 at 1). Based on that response, the Court discharged the OTSC but noted that "[t]he discharge of the Order to Show Cause is not a ruling on the merits of whether Plaintiff properly and fully exhausted his administrative remedies prior to initiating this action." (Doc. No. 10 at 4 ¶ 5).

In his Response and his Opposition to Defendants' MSJ, Plaintiff contends that he made a good faith attempt to exhaust his administrative remedies but that due to obstruction by FCJ officials the grievance process was unavailable to him and thus he should be excused from compliance. (*See* Doc. Nos. 8, 30). As noted above, "An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 578 U.S. 632. The Supreme Court has articulated specific circumstances where a failure to exhaust may be excused due to the

10

unavailability of administrative remedies:

> an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates . . . Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose.
>
> . . .
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. As the Solicitor General put the point: When rules are "so confusing that . . . no reasonable prisoner can use them," then "they're no longer available."
>
> . . .
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Ross*, 578 U.S. at 643-44.

Because Plaintiff proceeds pro se, the Court construes his Response to the Court's Order to Show Cause as incorporated within his Opposition to Defendants' MSJ. In the Response, Plaintiff asserts that he submitted a grievance in December 2020, but that he "wasn't able to appeal any grievances due to Sergeants not conducting grievance response interviews." (Doc. No. 8 at 1). It is unclear whether Plaintiff's reference to his ability to "appeal" is to his initial grievance or to a second level appeal. Plaintiff also notes that he mailed copies of his grievances "to a relative of mines [sic] who still has them to this day." (*Id.*).

In his Opposition Plaintiff provides additional detail regarding his alleged exhaustion efforts. He states that he "submit[ed] a grievance on or around 12-12-2020 while [he] was housed on MJ-FF-01[,] it was around night shift. [He] obtained the receiving officer[']s name. Her last name is Araguz. She signed the grievance even though she was reluctant at first. [He] received the yellow copy and she receive the original white copy." (Doc. No. 30 at 1). Plaintiff further contends that he never received any grievance response "even after submitting a multitude of requests [sic] forms to them." (*Id.*). Plaintiff alleges other instances in which he attempted to

11

submit grievances, but FCJ officers mishandled them. (*Id*. at 1-2). He asserts that "[Officer] Araguz was responsible for handling the documentation and didn't properly submit [his] grievance for the 11-28-2020 incident." (*Id*. at 2). Plaintiff does not, however, cite to any evidence in the record in support of these claims.

Moreover, Plaintiff's proffered evidence is insufficient to establish a genuine dispute of material fact. In a motion for summary judgment, once the moving party has demonstrated the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to set forth specific facts by affidavits, deposition testimony, documents, or discovery responses, showing there is a genuine issue that must be resolved by trial. *See* Fed. R. Civ. P. 56(c)(1); *Pacific Gulf Shipping Co.*, 992 F.3d at 897. A mere "scintilla of evidence" in support of the nonmoving party's position is insufficient. *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387. The evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party, to return a verdict in that party's favor. *Id.*

Here, Defendants have demonstrated the absence of a genuine dispute of material fact as to Plaintiff's non-exhaustion of his administrative remedies. They cite FCJ's records which show that while Plaintiff exhausted two grievances and submitted six other grievances during the relevant period, none of the grievances pertain to excessive use of force claims against Defendants Soun and Toon. (*See generally* Doc. No. 28-1).

Thus, Plaintiff is required to identify specific evidence in the record showing a genuine dispute of material fact as to his exhaustion of administrative remedies. Instead, Plaintiff has only made bald assertions, about having submitted a grievance in December 2020 that was mishandled by an Officer Faraguz. Plaintiff does not provide an affidavit, a copy of the grievance (which he claims he mailed to a relative), or any other evidence to support this claim. A "summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data[,]" *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Consequently, Plaintiff's bare assertions as to this Officer are insufficient to create a genuine dispute of material facts as to his exhaustion of administrative remedies. *See Uhuru v. Singh*, 2021 WL 5867463, at *5 (E.D. Cal. Dec. 10, 2021), report and recommendation adopted, 2022 WL 17722608 (E.D. Cal. Dec. 15,

2022) ("plaintiff's bare allegation of deplorable record keeping is not sufficient to overcome defendant's evidence that he failed to submit a grievance regarding his claims against defendant"); *see also Jordan v. Arce*, 2022 WL 17417869, at *11 (E.D. Cal. Dec. 5, 2022) ("[p]laintiff's bald and conclusory assertion that he submitted a 'grievance' that disappeared does not overcome Defendant's evidence that he failed to submit a grievance regarding the claims at issue in this action"), report and recommendation adopted, 2023 WL 425761 (E.D. Cal. Jan. 26, 2023); *Dennis v. Castrillo*, 2021 WL 5165219, at *4 (E.D. Cal. Nov. 5, 2021) ("[i]n the absence of something more than bare allegations, plaintiff cannot be found to have created a genuine dispute of fact over whether the grievance system was unavailable to him.").

Defendants have met their burden of demonstrating that Plaintiff did not properly and fully exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Plaintiff presents no evidence to the contrary. Thus, there is no genuine dispute of material fact as to whether Plaintiff's Eighth Amendment claims as to Defendants Soun and Toon were unexhausted.

Accordingly, it is hereby **ORDERED**:

1. Defendants Soun and Toon's Motion for Summary Judgment (Doc. No. 28) is **GRANTED**.
2. Plaintiff's Complaint (Doc. No. 1) is **DISMISSED**.
3. The Clerk of Court is directed to enter judgment in favor of Defendants and **CLOSE** this case.

Dated:   January 2, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE